LAWRENCE E. CASEY, AND UNION PRINTERS LEAGUE OF NEW JERSEY, PLAINTIFFS, v. RAYMOND MALE, COMMISSIONER OF THE DEPARTMENT OF LABOR AND INDUSTRY OF NEW JERSEY, DEFENDANT, AND THE EVENING NEWS PUBLISHING COMPANY, A NEW JERSEY CORPORATION, AND MORNING LEDGER COMPANY, A NEW JERSEY CORPORATION, INTERVENORS.

Superior Court of New Jersey
Law Division

Heard December 2, 1960—Decided February 7, 1961.

See also 63 *N. J. Super.* 255, 164 *A.* 2*d* 374.

*Messrs. Parsonnet, Weitzman and Oransky,* attorneys for the plaintiffs.

*Mr. David Furman,* Attorney General of the State of New Jersey, attorney for the defendant Commissioner.

*Messrs. Yauch and Fagan,* attorneys for defendants-intervenors.

WAUGH, A. J. S. C. At the pretrial conference of this matter, the court directed the parties to submit briefs setting forth the law of this State on the following issues:

(a) the admissibility of a bill passed only by the State Assembly which purports to amend the Factory Safety Laws, *R. S.* 34:6-1 *et seq.*, by expressly extending the requirements and prohibitions set forth therein to newspaper publishing plants; and

(b) the admissibility of evidence of the existence of certain fumes in the atmosphere of newspaper type casting rooms.

After a consideration of the briefs and the cases bearing on these subjects. I must conclude that the evidence on both points is inadmissible and, therefore, will be excluded at trial.

The general issue in the case is relatively simple of statement. The plaintiffs have commenced their action in lieu of prerogative writ in the nature of a *mandamus* to compel the defendant Commissioner of Labor and Industry to enforce the provisions of the *Factory Safety Laws, supra,* in newspaper plants. The Commissioner and the intervenors take the position that these laws were not intended to regulate newspaper plants. In support of their defense the intervenors propose to introduce at trial evidence of a Bill, A-445, which has been passed by the Assembly and has reposed in the Senate Committee of Labor and Industrial Relations since February 1960 without further legislative action. For

present purposes there is no need to set forth the terms of this bill in any detail, it being sufficient to state merely that the proposed amendment purports to expressly include newspaper plants within the coverage of the Safety Laws. There have been no prior decisions on the extent of application of the statute here in question, as it relates to the issue before the court, either by our courts or by the administrative agency charged with its enforcement, the only reported constructions being several opinions of Attorneys General of this State. See: *October 6, 1911, Attorney General's Opinion to the Commissioner; Formal Opinions Nos. 36 (Nov. 20, 1951), 8 (May 20, 1952), 52 (Dec. 3, 1953) and No. 13 (Sept. 25, 1958)*.

The defendants-intervenors maintain that evidence of the existence of this bill is admissible "in a primary sense" because the fact of introduction indicates "a legislative awareness that the scope of the original bill is not sufficiently broad to encompass newspaper plants." They also urge that the evidence is admissible in a secondary sense, since it points up legislative inactivity in the face of a prior administrative interpretation. The overriding purpose of the offer of this evidence is to assist in a construction of the statute in order to determine if the provisions of the Safety Laws as are now in force extend to newspaper plants.

As support for their theories, the defendants, in the main, rely upon the cases of *Barringer v. Miele*, 6 *N. J.* 139 (1951) ; *Eagle Truck Transport, Inc. v. Board of Review*, 29 *N. J.* 280 (1959) ; and *Ablondi v. Board of Review*, 8 *N. J. Super.* 71 (*App. Div.* 1950), the latter case being cited as authority for the admissibility of evidence of the proposed amendment.

In *Barringer v. Miele, supra,* the Supreme Court was confronted with a situation where the plaintiff alleged that he had been wrongfully dismissed by the Superintendent of Elections for Essex County from his position as a clerk-investigator in violation of the *Veteran's Tenure Act, N. J. S. A.* 38 :16–1. There the court alluded to the doctrine of legislative inactivity and stated that

"In construing a statute it is to be assumed that the Legislature is thoroughly conversant with its own legislation and the *judicial construction placed thereon.* \* \* \* *The construction of a statute by the courts,* supported by long acquiescence on the part of the Legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent." *Id.*, 6 *N. J.*, at *p.* 144. (Emphasis added)

There is, however, an obvious difference between *Barringer* and the present case. Prior to 1951, *McCallion v. Allan*, 134 *N. J. L.* 322 (*Sup. Ct.* 1946) interpreted *P. L.* 1923, *c.* 9 and subsequent amendments as vesting in the Superintendent of Elections the power of removal unrestrained by the terms of the *Veteran's Tenure Act, supra.* During a period of five years subsequent to *McCallion*, our Legislature adopted a great number of statutes dealing with and changing the election laws, but not one bill was passed which altered the superintendent's power of hire and dismissal, nor was the language of the *Veteran's Tenure Act* changed in any manner. It is in this setting that the true application of the doctrine of legislative inactivity is to be found and understood, not in cases such as the one under consideration. *Barringer*, then, is obviously distinguishable inasmuch as we are not concerned with judicial construction.

So also is *Eagle Truck Transport, Inc. v. Board of Review, supra*, inapplicable. The Supreme Court was concerned there with an interpretation of *R. S.* 43:21–1 *et seq.* In passing upon the extent of the act, the court looked to its legislative history and noted that subsequent to a construction of the law by the Board of Review of the State Division of Employment Security the Legislature did not see fit to amend the act so as to contravene the result of the Board's decision. Here, too, the concern was primarily with the rule that legislative inactivity subsequent to a construction is evidence that the construction was in harmony with legislative intent.

"There is no doubt that the failure of the lawmakers to amend a statute after a construction has been placed upon it *by an agency*

*charged with its administration* is often spoken of as some evidence that the interpretation accords with their intent in enacting it. * * * However, the inference is not at all conclusive and cannot be considered as a bar to a later determination by the agency or by the courts that the earlier view was erroneous." (29 *N. J.*, at *p.* 291.) (Emphasis added)

On the basis of this language, it can be argued that the Supreme Court was extending the rule of judicial interpretation to include administrative agency interpretations, but in the matter presently before the court no such factual situation exists. Neither the defendant Commissioner nor his department has sought to construe the laws in question nor has there been any judicial or administrative agency determination as to the extent of the application of these laws in an adversary proceeding. *Eagle* does contain language which notes in passing that certain bills were introduced subsequent to the agency construction referred to therein, and that these bills were not passed. As I view it, this passing comment was merely a recitation of the plaintiff's offer of proof which had no real bearing on the decision other than the fact of failure of passage related and gave support to the rule of construction used, to wit, legislative inactivity.

The defendant-intervenors submit that *Ablondi v. Board of Review, supra,* "is authority sustaining the position of the intervening defendants." There the plaintiff sought unemployment compensation alleging his entitlement resulted from a curtailment of work due to pending contract negotiations between his employer and the Fur Dressers' and Fur Floor Walkers' Unions. The Board of Review of the State Division of Employment Security held that Ablondi was disqualified by virtue of the provisions of *N. J. S. A.* 43:21–5(*d*) and found that his unemployment was due to a stoppage of work because of a labor dispute, thus bringing the case within the purview of that statute. The Appellate Division affirmed and construed the phrase "stoppage of work * * * because of a labor dispute" to include such

work stoppage as was shown by the facts therein. As primary authority for this determination the court cited and relied upon decisional law of this and other jurisdictions which construed and defined provisions identical with those contained in our statute.

In the court's opinion, Justice (then Judge) Jacobs alluded to the fact that several bills had been introduced in the Legislature which would have limited the factual situations to which the disqualifying phrase would have applied.

"It may be noted that during the current session of the New Jersey Legislature, several bills embodying proposed amendments of R. S. 43:21-5(d) were introduced. See S. 117, A. 89, A. 145 and A. 199. A. 145 sought to restrict the statutory disqualification clause to strikes and S. 117 and A. 89 sought to exclude from its terms instances where the labor dispute 'was commenced, instituted, occasioned or prolonged by a lockout or by any other act of his employer or of a person acting on behalf or in the interest of his employer whereby he is refused permission to work or is otherwise prevented from engaging in his customary occupation or employment at such factory, establishment or other premises.' None of the proposed amendments has been enacted into law." (8 N. J. Super., at pp. 77-78)

It would thus seem that *Ablondi* furnishes authority for the proposition advanced by the intervenors here, but careful consideration of the language indicates that the court refused to depart from the principles laid down in prior judicial and administrative interpretations of the legislative intention in the passage of the act in question.

"We see no reason for departing from the foregoing principles. They represent interpretations, generally accepted both administratively and judicially, of the legislative contemplation in the passage of a uniform statutory provision." (*Id.*, at p. 77.)

This being so, that portion of the decision referring to those bills is *dicta* and not a rule of construction. One need only look to the last sentence of that passage, "None of the proposed amendments has been enacted into law" to understand that fact.

As I have indicated heretofore, the intervenors urge the admissibility of this bill as evidence of legislative awareness that "the scope of the original bill was not broad enough to cover newspaper publishing plants." I find this position untenable when one considers that the Legislature has not acted upon this proposal as a body. I cannot conceive how it can be stated logically that the acts of the Assembly with no action by the Senate constitutes or indicate an awareness on the part of the Legislature. The intervenors recognized this problem in their brief but attempted to blunt it by pointing to the fact that one house passed the measure as a body, therefore the awareness, they say, cannot be one of individual legislators. But the legislative action with which the court is concerned is that of the entire Legislature—not one branch thereof. If the intervenors' position here is well founded, could not the plaintiff with equal force argue that the Senate's inaction on the bill requires the inference that no legislation was necessary? Further, the practice of permitting this type of proof could easily lead to the vice of pressure groups causing legislation to be introduced merely for the purpose of being offered into evidence and influencing this type of case. It would create a morass in already difficult territory.

██ Passing to the problem of the admission of evidence of fumes, I find this inadmissible for the very concise reasons suggested by the intervenors in their brief. There the question is posed:

"How can proof that lead fumes exist in the type casting room of a publisher tend to prove that newspaper establishments are within the Act in litigation? The *factum probandum* is not: Are any provisions of *R. S.* 34:6–1 *et seq.* being violated. The issue is: Are newspaper publishing establishments covered by Article 6 of Chapter 34? Proof of violations has no relevancy to prove coverage."

The answer to this query can only be that the offered proof can have no relevancy to prove coverage and for this reason will be excluded at trial.